UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X

CORRINE TOMPKINS,                                           **COMPLAINT**

                                 Plaintiff,                 3:25-cv-909 (AJB/ML)

                                                            <u>Jury Trial Demanded</u>

-against-

CORNELL COOPERATIVE EXTENSION
DELAWARE COUNTY and CORNELL UNIVERSITY,

                                 Defendants.
-------------------------------------------------------------------------------X

Plaintiff CORRINE TOMPKINS, by and through her attorney, MOSHES LAW P.C., complaining of the Defendants herein, alleges, upon knowledge as to herself and her own actions, and upon information and belief as to all other matters:


## JURISDICTION AND VENUE

1.      This is a civil action based upon Defendants' violations of the Title VII of the Civil Rights Act of 1964, as amended; the Equal Pay Act of 1963, as amended; New York State Human Rights Law (New York Executive Law §292 *et seq*.), as amended; New York Labor Law §194; and all other applicable federal, state and local laws and regulations which can be inferred from the facts set forth herein.

2.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(4).  The supplemental jurisdiction of the Court (28 U.S.C. § 1367) is invoked over state and local law causes of action.

3.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and/or 28 U.S.C. § 1391(b)(2).

1

4.   The jurisdictional prerequisites to this lawsuit have been completed.   On or about August 26, 2024, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against each of the defendants in this action.      The EEOC eventually split the Charge of Discrimination into two Charges, one against each defendant.

5.   The EEOC issued Plaintiff a Right to Sue Letter as to Cornell Cooperative Extensive Delaware County.[1]  That Right to Sue Letter is dated April 14, 2025.  A copy of the Right to Sue letter is attached hereto as **Exhibit A**.   This action is being filed less than ninety (90) days after the Right to Sue Letter was issued.

## **PARTIES**

6.      Plaintiff Corrine Tompkins ("Tompkins") was and is, at all relevant times, a citizen of Delaware County in the State of New York.  Plaintiff was formerly employed by both Defendants as joint employers.

7.      Defendant Cornell University is a private educational institution with a principal place of business at 616 Thurston Avenue, Ithaca, NY 14853, in Tompkins County, New York.

8.      Defendant Cornell Cooperative Extension Delaware County ("CCE Delaware") has a principal place of business at 34570 State Highway 10, Suite 2, Hamden, New York 13782, in Delaware County, New York.  CCE Delaware is operated, in whole or in part, by Cornell University, through Cornell's Extension Administration.

---

[1] The Right to Sue issued against Cornell University expired, but the Equal Pay Act and state law claims against Cornell are timely brought in this action.

9.     Cornell University issued Tompkins's paychecks, maintained compensation guidelines for CCE staff, and assisted with the maintenance of employment records for CCE Delaware. In addition, Cornell's Extension Administration holds the contract with "HR ONE," the third-party HR company that received Tompkins's initial complaint of retaliation and was recommended to give the CCE Delaware Board of Directors assistance.  Also, Cornell's Extension Administration, through Lori North (Shared Business Network HR Lead for the Leatherstocking region) and Danielle Hautaniemi (State Extension Specialist for CCE Delaware), were consulted as the Cornell authorities regarding classification and re-classification of Tompkins' position and the decision to terminate Tompkins.

## FACTS

### Background Facts

10.     Tompkins began working for CCE Delaware seasonally, as a camp counselor, in the summer of 2008.  Tompkins was recruited to work full time for CCE Delaware in 2015.

11.     Throughout her employment with Defendants, Tompkins' work performance was satisfactory or better.

### Discriminatory Conduct

12.     In March 2021, when Tompkins inquired about taking FMLA in preparation of possibly taking a newborn into her care, Executive Director Jeanne Darling made a comment to the effect that women *can raise a family or have a career but that it was very hard to do both*.

13.     Tompkins and other female employees of CCE Delaware (except for Darling) were not permitted to attend committee meetings until those meetings went virtual in 2020.

3

14.     Often, female employees who asked questions or complained were viewed as aggressive and were penalized in their attempts to advance in their careers at CCE Delaware.

15.     Additionally, as compared to female employees, similarly-situated males were often paid more, promoted at a faster pace, and internally promoted without having to apply.  For example, a male employee turned in his company car and received a raise in salary, but when Tompkins requested the same, she was denied.

16.     A promotion for the position to lead the 4-H Camping Program at CCE Delaware was going to become available when John Hannum, the 4-H Program Team Leader/Camp Administrator, retired in or about October 2021. Tompkins had been working as the Camp Director beginning in 2015 and had served in multiple roles at the camp prior to that. She met the qualifications for the position and made it known that she was interested in applying for the Camp Leadership position after Hannum's retirement.

17.     Tompkins would be the first woman to hold this position of Camp Administrator in the history of 4-H Camp Shankitunk. Tompkins was concerned when the position was reclassified/posted down to a lower status (Team Leader down to Resource Educator), despite retaining responsibilities for leadership of the Camp and Lennox Forest programs. This change was effectuated by the Executive Director of CCE Delaware with approval from the CCE Delaware County Board of Directors and Extension Administration HR Shared Business Network representative for Delaware County, Lori North.

18.     Tompkins was required to apply for, provide her credentials for, and interview for Hannum's former position.  In contrast, similarly-situated male employees at CCE Delaware often were simply placed in a vacant positions and/or had a position created for them.

4

19.     Tompkins worked above her current position to fulfill administrative oversight of the 4-H Camp Shankitunk and Lennox Forest programs prior to Hannum's former position being filled, without any additional compensation being provided to Tompkins.  In contrast, a stipend of $1,000 per month was provided to the male camp director who stepped up to fulfill Tompkins's duties after she was later terminated.

20.     Tompkins was selected for Hannum's position, which was salaried, to begin on January 4, 2022. Tompkins sought $60,000 annually, was offered $53,500, and agreed to accept $55,000 for this position.  In contrast, Hannum, a male, upon information and belief, had been making at least $70,000 per year in the same position.

21.     Additionally, Tompkins was not conferred a title, as mandated by policies of both CCE Delaware and the Extension Administration.

22.     Tompkins worked in the Resources Educator/4-H Camp Administrator Position for six months until Darling retired in or about June of 2022, in the wake of other discrimination and retaliation complaints from past colleagues.  Upon information and belief, those colleagues included, at least, one of whom filed with the EEOC and one of whom has a pending case in this Court.  Also upon information and belief, both asserted, *inter alia*, claims of gender discrimination, thereby evidencing a pattern and practice of gender discrimination by Defendants.

23.     Tompkins welcomed the Interim Executive Director, Jack Salo, sharing some of her previous experience regarding the inequitable treatment of temporary camp staff and female workers and her hopes for change in the future.

24.     Tompkins was added to the Leadership Team and eventually asked her supervisor (Emily Roach) if Roach would support a reclassification request to a 4-H Camp Program Team Leader. Roach agreed. Salo asked that the proposed reclassification be included in a proposed Organizational Chart for the incoming Executive Director to consider.

25.     During his tenure, Salo uncovered, documented, and addressed some of the unlawful and inequitable activities that had been occurring within CCE Delaware County, including unpaid overtime.   Tompkins was owed unpaid wages and still is, in a matter being handled by the Department of Labor.

26.     CCE Delaware County hired a new Executive Director, Mandeep Virk-Baker, in December of 2022.

27.     In January 2023, Tompkins formally requested a reclassification of her position, sharing, at least, her previous experience and the scope of duties she had been performing over the past year.

28.     Virk-Baker scheduled a meeting for February 6, 2023 to discuss the reclassification further. Virk-Baker also planned to seek guidance from the Extension Administration before responding to the reclassification request, thus demonstrating the Extension Administrations' direct control over the decision-making process and involvement as a joint employer of Tompkins.

29.     After being hired, Virk-Baker maintained an angry, critical tone in the workplace, including making comments on employees' physical appearances.  For example, Virk-Baker told Tompkins that Tompkins' "eyes look terrible" due to a condition that causes Tompkins to have dark shadows around her eyes.  Virk-Baker's negativity and criticisms had a disparate impact on female employees.  Four female employees resigned due to Virk-Baker's behavior.

30.     Tompkins began experiencing retaliation shortly after her position reclassification request and her complaint inquiries.  That retaliation included, at least: being ignored by Virk-Baker when business needs were expressed; being constructively removed from the leadership team; having a financial reimbursement withheld; having bills not being paid so that registration for the 4-H Camp Shankitunk program was shut down and her business credit card was maxed out at peak season, forcing her to spend her own money to purchase program supplies; and having professional development opportunities being jeopardized.

31.     As an example, Tompkins submitted a request for funding for a professional development conference (scheduled for April 25-27, 2023) to State Extension Specialist Paul O'Connor.  Tompkins needed Virk-Baker to sign off on the request, but Virk-Baker refused to do so unless edits were made to the application. Tompkins withdrew her application, made the changes, and re-submitted the application, but Virk-Baker still refused to sign off on the request. Fortunately, an alternative funding opportunity was identified, and Tompkins was able to attend.

32.     Tompkins contacted the Extension Administration's "Ethics Hotline," on or about March 23, 2023, but was not satisfied due to the lack of proactive measures to remedy Virk-Baker's conduct or address the retaliation.

33.     Tompkins also met with North on or about April 17, 2023.  Tompkins reported past employer conduct that she had concerns about, including the comment regarding career or family, unpaid overtime, retirement, and her position reclassification request.  Tompkins sent a follow-up email to North which was not sufficiently responded to, and Tompkins began to feel that it was not safe to ask for help.

34.     Tompkins' reclassification request was never formally responded to but was effectively denied in or about April 2023 when Tompkins was informed by North and again, on or about October 3, 2023, by Mandeep Virk-Baker that her reclassification request would not go through because two Team Leaders (Roach and Tompkins) within a single program was purportedly not possible. Tompkins complained regarding this response to her supervisor because the agriculture team had two team leaders (both men).

35.     An office climate survey and pay equity study based on Tompkins and other female workers' complaints was promised and approved but not conducted.

36.     Upon Virk-Baker's return from maternity leave in October 2023, Virk-Baker promised, but did not provide, a raise to Tompkins.

37.     On or about November 17, 2023, during the CCE Delaware Annual meeting, Tompkins was not permitted to present the Friend of Extension Award to the recipient that she had recommended or to speak about the recipient's involvement and support of 4-H Camp and Extension programming, despite being asked by her supervisor to do so.

38.     On or about January 2024, Tompkins complained to Roach that her position reclassification request was not treated fairly.

39.     In or about February 2024, Virk-Baker demanded that Roach work with Tompkins on the budget for Tompkins' program, even though Tompkins had previously done and was perfectly able to do the budgeting on her own, for which she had received praise.

40.     On or about February 14, 2024, Virk Baker met with Tompkins and Roach to discuss business related needs. This meeting (without prior notice to Tompkins) included a member of HR ONE (the Extension Administration contracted HR Third Party). Roach confirmed with Virk-Baker that this meeting was not intended to be a disciplinary meeting. During this conversation (among other things), Tompkins asked for an update on her stated salary increase, referencing past employer violations. Virk-Baker represented that a response could not be provided at this time due to an ongoing salary study (which CCE Board members later stated had never been commenced).

41.     On February 21, 2024, Tompkins asked follow-up questions about her complaints, including how to escalate a complaint.

42.     Tompkins was terminated less than a week later, on February 26, 2024, along with Roach.  Tompkins was replaced by a male, Tim Davis. Defendants pretextually asserted that Tompkins was being terminated for "unprofessionalism," "insubordination," "intimidation," "misconduct," which alleged conduct either was not true or simply described, as a negative, Tompkins' assertion of rights as to pay, titles, and discrimination.

43.     Tompkins had not been disciplined during her tenure at CCE Delaware.

44.    A payout of unused vacation was not made to Tompkins on February 29, 2024, as was promised, but was delayed to March 15, 2024.

45.    Tompkins filed a termination appeal letter with Betty Scott (CCE Delaware Board President) on March 2, 2024.

46.    On or about March 8, 2024, Tompkins' position was posted at a salary greater than what she had been paid.

47.    Virk-Baker was placed on administrative leave on or about March 13, 2024, after a public outcry about Roach and Tompkins' terminations.

48.    CCE Delaware County allegedly started investigating Virk-Baker's misconduct.

49.    When Tompkins followed up with the investigator on April 15, 2024, to let the investigator know that she believed discrimination had occurred and was a factor in her termination, no additional investigative questions were asked of her.

50.    Tompkins also reached out to the Extension Administration's Director (Andrew Turner) on May 18, 2024, for answers or timeframes regarding the investigation and appeal response. Turner stated, "there are many issues related to Human Resources that are being reviewed in terms of what is provided from Cornell [Extension Administration], the role of the SBN, and the role of the local Association, so this is a dynamic and evolving landscape." Turner invited feedback.  Tompkins shared policy reform suggestions based on her experience and shared with Turner that she felt she and other women had been discriminated against.

51.     On or about June 14, 2024, CCE Delaware announced "CCE Delaware County has completed a thorough investigation as to whether recent personnel decisions made by Dr. Virk-Baker as Executive Director of CCE Delaware County were unlawful. The investigation concluded that those personnel decisions were not unlawful. Nonetheless, Dr. Virk-Baker and CCE Delaware County have agreed to mutually part ways and seek other opportunities."

52.     On June 15, 2024, CCE Delaware reached out to Tompkins to discuss a return package.   However, the return package would have required Tompkins to waive her rights to claims against at least CCE Delaware and not raise new issues or reiterate old issues.

53.     A series of conversations followed (on or about June 19, 2024, June 25, 2024, and July 8, 2024) that included CCE Board President Betty Scott (a proxy for the organization), Carol Michalski (Board Vice President), and Nancy Grotevant (Interim Executive Director). Scott and Michalski told Tompkins there was no evidence or cause for her firing and that they had told Virk-Baker not to terminate Tompkins or Roach. They immediately requested that Tompkins and Roach be reinstated, but Virk-Baker refused. Scott stated she sought guidance from State Extension Specialist Danielle Hautenami when complaints were made, but did not follow up on all complaints because she was sure Virk-Baker would figure out who complained and retaliate against those staff members.   Tompkins asked Michalski if the discrimination was investigated, but the response left Tompkins feeling as if it had not been.

54.     Additionally, the CCE Delaware Personnel Committee Chair, Libby Kelly, stated, on or about May 8, 2024, that the promised Salary Equity study was not a priority that time.

55.     Tompkins stated that discrimination is unlawful and asked for remediation of discriminatory practices. CCE Delaware refused, stating that the organization cannot look back and can only move forward from here, denying Tompkins' requests and disregarding the fact women were not typically paid overtime for their work or paid equally to men. Scott and Michalski both stated that the organization is not discriminating against women simply because men are being paid more.

56.     In the end, CCE Delaware refused to engage in discussions about remedying the discrimination and wage and hour violations and decided to withdraw the offer to reinstate Tompkins in the summer of 2024.

57.     The duties that Tompkins had been performing regarding leadership of the 4-H Camp Shankitunk and Lennox Forest programs were re-assigned to a Team Leader position, confirming Tompkins' assertion that her position should have been reclassified.

58.     Neither Tompkins's request for reclassification nor her termination appeal were formally responded to, despite multiple follow-up inquiries over the span of nearly two years.

59.     Furthermore, upon information and belief, in recent years, at least five to ten female employees of Defendants were subjected to retaliation when they raised issues of discrimination and/or a hostile working environment. Upon information and belief, one of those employees was even written up by Virk-Baker for raising pay issues at a staff meeting.

60.     Tompkins was able to return to work at CCE Delaware on May 20, 2025, after she prevailed as the best candidate after two rounds of interviews.   This return to work with Defendants came more than a year of not working for Defendants for no legitimate reason and after suffering emotional damages from that wrongful, discriminatory, retaliatory, improper, and/or unnecessary termination.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
(Gender Discrimination)
(Under Title VII as to CCE Delaware and
under the New York State Human Rights Law as to all Defendants)

61.    Plaintiff repeats and re-alleges each and every allegation above as though more fully set forth herein.

62.    As described in detail above, Defendants subjected Plaintiff Corrine Tompkins to discrimination based on her gender (female), including, at a minimum: gender-based comment(s), disparate treatment as compared to similarly-situated male employees, the disparate impact of Defendants' practices and policies, failure to remedy discrimination and discriminatory practices, and adverse employment actions against Tompkins.

63.    This discrimination violates Title VII of the Civil Rights Act of 1964, as amended; New York Executive Law §292 *et seq.,* as amended; and all other applicable federal, state and local laws and regulations, that can be inferred from the facts set for the herein.

64.    Because of Defendants' discriminatory actions against Plaintiff, Plaintiff has suffered a loss of earnings and benefits, great pain, mental anguish and physical injury.  Plaintiff is thus entitled to all forms of applicable compensatory damages, equitable relief, and any other damages and/or remedies permissible under law.

SECOND CAUSE OF ACTION
(Retaliation)
(Under Title VII as to CCE Delaware and
under the New York State Human Rights Law as to all Defendants)

65.    Plaintiff repeats and re-alleges each and every allegation above as though more fully set forth herein.

66.    As described in detail above,  Defendants subjected Plaintiff Tompkins to retaliation, based, at least, on her protected activities of making complaints, including, at a minimum: failure to remedy discriminatory conduct and practices, conduct intended to dissuade Tompkins from making complaints, adverse employment actions against Tompkins, including, but not limited to, terminating Plaintiff for pretextual reasons within a short period after she complained.

67.    This retaliation violates Title VII of the Civil Rights Act of 1964, as amended; New York Executive Law §292 *et seq.,* as amended; and all other applicable federal, state and local laws and regulations, that can be inferred from the facts set for the herein.

68.    Because of Defendants' retaliatory actions against Plaintiff, Plaintiff has suffered a loss of earnings and benefits, great pain, mental anguish and physical injury.  Plaintiff is thus entitled to all forms of applicable compensatory damages, equitable relief, and any other damages and/or remedies permissible under law.

THIRD CAUSE OF ACTION
(Unequal Pay Based on Gender)
(Under Equal Pay Act of 1963 and
New York Labor Law §194 as to all Defendants)

69.    Plaintiff repeats and re-alleges each and every allegation above as though more fully set forth herein.

14

70.     As described in detail above, Plaintiff Corrine Tompkins (and other female employees of Defendant) were paid less than male employees for the same or similar work.

71.     By paying Plaintiff (and other female employees of Defendant) less money than males for the same or similar work, Defendants have violated the Equal Pay Act of 1963, as amended, New York Labor Law §194, and all other applicable federal, state and local laws and regulations, that can be inferred from the facts set for the herein.


WHEREFORE, Plaintiff demands judgment against Defendants in the form of and/or for compensatory, emotional, physical, and punitive damages (where applicable), compensation for all lost pay, interest, injunctive relief, and any other damages permitted by law.  Plaintiff also demands judgment against Defendants for each cause action and for all applicable and permissible damages, in an amount to be assessed at the time of trial.  Plaintiff further seeks injunctive relief, including but not limited to, a permanent injunction enjoining all Defendants and their agents from any further actions abridging Plaintiff's rights. Plaintiff further demands all attorneys' fees, disbursements, and other costs and all further relief, equitable or otherwise, to which Plaintiff is entitled and/or which the court deems just and proper.


Dated: Brooklyn, New York
       July 11, 2025

                              Moshes Law, P.C.
                              *Attorneys for Plaintiff*

                              _____
                              By: Matthew S. Porges, Esq., *of counsel*
                              517 Brighton Beach Avenue, 2nd Floor
                              Brooklyn, NY 11235
                              Telephone: 718-504-6090
                              mspesq@mspesq.com

15

# EXHIBIT A

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Houston District Office**
1919 Smith Street, 6th Floor
Houston, TX 77002
(346) 327-7700
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 04/14/2025

**To:** Corrine Tompkins
29 Lower Third Brook Road
Walton, NY 13856
Charge No: 525-2024-02405

EEOC Representative and email:    TERANGELO DAVIS
Federal Investigator
terangelo.davis@eeoc.gov

### DISMISSAL OF CHARGE

The EEOC has granted your request for a Notice of Right to Sue, and more than 180 days have passed since the filing of this charge.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 525-2024-02405.

On behalf of the Commission,

Digitally Signed By:Rayford O. Irvin
04/14/2025

Rayford O. Irvin
District Director

**Cc:**
Angelo Catalano
Bond, Schoeneck & King, PLLC
One Lincoln Center 110 West Fayette Dt
Syracuse, NY 13202

Wendy Tarlow
Cornell University
118 Sage Pl STE 2
Ithaca, NY 14850

34570 STATE HIGHWAY 10 STE 2
HAMDEN, NY 13782

Kathryn Barcroft Esq.
Solomon Law Firm, PLLC
300 Great Oaks Blvd, Ste 321
Albany, NY 12203

Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

### INFORMATION RELATED TO FILING SUIT
### UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

#### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

#### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

#### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 525-2024-02405 to the

Enclosure with EEOC Notice of Closure and Rights (01/22)

District Director at Rayford O. Irvin, 1919 Smith Street 6th Floor, Houston, TX 77002.

**<u>To make a Section 83 request for your charge file</u>**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 525-2024-02405 to the District Director at Rayford O. Irvin, 1919 Smith Street 6th Floor, Houston, TX 77002.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

## VERIFICATION

STATE OF NEW YORK          )
                                              : ss.:
COUNTY OF Delaware

**CORRINE TOMPKINS,** being duly sworn, deposes and says:

I am the Plaintiff with respect to the Complaint in this Action. I have read the attached Complaint. Said Complaint is true to my own personal knowledge, except as to matters therein stated to be alleged on information and belief, and, as to those matters, I believe them to be true.

_____
**CORRINE TOMPKINS**

Sworn to before me this
11th day of July, 2025

_____
Notary Public

Makenna Hope
Notary Public, State of New York
Delaware County, No. 01HO010627
My Commission Expires 7/5/27