**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

CORRINE TOMPKINS,

               Plaintiff,

    -v-

CORNELL COOPERATIVE EXTENSION
DELAWARE COUNTY and CORNELL
UNIVERSITY,

               Defendants.

3:25-CV-909 (AJB/ML)

**Hon. Anthony Brindisi, U.S. District Judge:**

**<u>DECISION and ORDER</u>**

## I.      INTRODUCTION

On July 11, 2025, plaintiff Corrine Tompkins ("plaintiff") filed this employment

discrimination action under Title VII of the Civil Rights Act of 1964, the Equal Pay Act of 1963

(the "EPA"), and related state law, against defendants Cornell Cooperative Extension Delaware

County ("CCE Delaware") and Cornell University (the "University").  Dkt. No. 1.  In short,

plaintiff alleges that defendants discriminated against her because of her gender and retaliated

against her after she complained of the alleged discrimination.  *Id.*

On September 12, 2025, the University moved to dismiss plaintiff's complaint under

Federal Rule of Civil Procedure ("Rule") 12(b)(6).  Dkt. No. 5.  Plaintiff opposed the

University's motion and cross-moved to amend her complaint pursuant to Rule 15(a)(2).  Dkt.

Nos. 12–13.[1]  The motions have been fully briefed, Dkt. No. 14, and will be considered on the

basis of the submissions without oral argument.

---

[1] CCE Delaware has answered the complaint.  Dkt. No. 16.

## II.   BACKGROUND[2]

### A.  Cooperative Extension Services

The University is a private post-secondary educational institution in Ithaca, New York. Prop. Am. Compl. ¶ 6.  It is also New York State's sole land-grant institution.  N.Y. Educ. Law § 5701.  A land-grant institution is a college or university that has been designated by a state to receive certain federal benefits in exchange for its commitment to agricultural research and education.  *See* 7 U.S.C. § 301.  As relevant here, land-grant institutions receive federal funding to provide "cooperative extension services" within their state.  7 U.S.C. § 341–49.  Cooperative extension services are informal, community-based educational programs administered by land-grant institutions in partnership with federal, state, and local governments.  *See* 7 U.S.C. § 3124a; N.Y. County Law § 224.

In New York, cooperative extension services are administered by the University in conjunction with "county extension service associations."  N.Y. County Law § 224(8).  Section 224 of the New York County Law ("County Law § 224") describes a county extension service association as a "subordinate governmental agency consisting of an unincorporated organization of citizens" of a particular county.  *Id.*  CCE Delaware is the county extension service association in Delaware County, New York.  Prop. Am. Compl. ¶¶ 8, 12–13.  As a subordinate governmental agency, CCE Delaware has its own constitution and board of directors, but its operations are subject to significant oversight by the University acting as an agent for the state.  N.Y. County Law § 224(8).

---

[2] For reasons explained *infra*, the Court draws the following factual narrative from plaintiff's proposed amended complaint, Dkt. No. 12-1, "and matters of which judicial notice may be taken, including relevant statutes."  *Soto v. Disney Severance Pay Plan*, 26 F.4th 114, 117 n.1 (2d Cir. 2022).  The allegations in plaintiff's proposed amended complaint are taken as true for purposes of resolving the pending motions.

### B. Plaintiff's Employment

In 2008, CCE Delaware hired plaintiff to work seasonally as a summer camp counselor. Dkt. No. 12-1 ("Prop. Am. Compl.") ¶ 14.  Plaintiff assumed a full-time camp director position in 2015.  *Id.* ¶ 15.  According to plaintiff, she and other female employees of CCE Delaware received less favorable treatment from their employer on account of their gender: They were paid less than their male coworkers, denied benefits given to male employees, excluded from meetings, and harshly criticized.  Prop. Am. Compl.  ¶¶ 16–19, 21–25, 32–35, 40–41, 43, 49.

Additionally, plaintiff alleges that she was hindered in her efforts to advance in her career based on her gender, primarily at the hands of CCE Delaware's former Executive Director, Mandeep Virk-Baker ("Virk-Baker").  Prop. Am. Compl.  ¶¶ 33–35, 40, 43.  CCE Delaware hired Virk-Baker to serve as its Executive Director in December of 2022.  *Id.* ¶ 30.  In the months that followed, plaintiff repeatedly raised concerns with CCE Delaware and University representatives over Virk-Baker's allegedly discriminatory conduct, but her complaints went unanswered.  *Id.* ¶¶ 36–39, 42.  Eventually, plaintiff sought guidance on how to escalate her complaints.  *Id.* ¶ 45.  Less than a week later, on February 23, 2024, plaintiff was terminated.  *Id.* ¶¶ 46–47.

In March 2024, CCE Delaware placed Virk-Baker on administrative leave while it investigated her alleged misconduct.  Prop. Am. Compl. ¶¶ 52–53.  At the conclusion of the investigation, CCE Delaware announced that Virk-Baker's challenged personnel decisions were not unlawful, but that Virk-Baker had nevertheless agreed to leave CCE Delaware.  *Id.* ¶ 57.  One day after the announcement, CCE Delaware contacted plaintiff to discuss the possibility of reinstatement.  *Id.* ¶ 58.  After multiple discussions, CCE Delaware and plaintiff were unable to reach an agreement, and CCE Delaware withdrew its return offer.  *Id.* ¶¶ 59–62.

Plaintiff eventually returned to CCE Delaware over a year after her initial termination.  In May 2025, plaintiff applied to an opening at CCE Delaware and was rehired after two rounds of interviews.  Prop. Am. Compl. ¶ 66.

## III.   LEGAL STANDARD

### A.  Rule 12(b)(6)

The Federal Rules of Civil Procedure permit a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss brought under Rule 12(b)(6), a "complaint must include 'enough facts to state a claim to relief that is plausible on its face.'"  *Kane v. Mount Pleasant Cent. Sch. Dist.*, 80 F.4th 101, 106 (2d Cir. 2023) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Palin v. New York Times Co.*, 940 F.3d 804, 810 (2d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678).

To assess this plausibility requirement, the court "must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and draw all reasonable inferences in favor of the plaintiff, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).  In doing so, the court generally confines itself to the facts alleged in the pleading, documents attached to the complaint or incorporated into it by reference, and matters of which judicial notice may be taken.  *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016)).

### B.  Rule 15(a)(2)

In general, "[l]eave to file an amended complaint shall be freely given when justice so requires, . . . and should not be denied unless there is evidence of undue delay, bad faith, undue

prejudice to the non-movant, or futility." *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (internal quotation omitted).  Where, as here, a plaintiff has moved to amend her complaint after a defendant has filed a motion to dismiss, the district court may evaluate the pending motion to dismiss "in light of the facts alleged in the amended complaint." *Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 303–04 (2d Cir. 2020).  In such cases, "leave to amend will be denied as futile only if the proposed [amendments] cannot withstand a 12(b)(6) motion to dismiss for failure to state a claim, *i.e.,* if it appears beyond doubt that the plaintiff can plead no set of facts that would entitle him to relief." *Milanese*, 244 F.3d at 110 (citing *Ricciuti v. N.Y.C. Transit Auth.,* 941 F.2d 119, 123 (2d Cir. 1991)).

## IV.    DISCUSSION

Plaintiff asserts the following claims against the University: (1) unequal pay claims under the EPA and the New York Labor Law (the "NYLL"); (2) a gender discrimination claim under the New York State Human Rights Law (the "NYSHRL"); and (3) a retaliation claim under the NYSHRL.  Prop. Am. Compl. ¶¶ 67–77.[3]

The University argues that all of plaintiff's claims against it must be dismissed because plaintiff has not plausibly alleged that the University was her employer under the relevant statutes.  Dkt. No. 5-1 ("Def.'s Mem.") at 7–17.  In opposition, plaintiff maintains that the allegations in her proposed amended pleading support a plausible inference that the University was her employer.  Dkt. No. 13 ("Pl.'s Opp.") at 6–13.  The University disagrees.  Dkt. No. 14 ("Def.'s Reply") at 5–7.

---

[3] Additionally, plaintiff has asserted Title VII employment discrimination and retaliation claims against CCE Delaware, but not the University.  Prop. Am. Compl. ¶ 5 n.1.

### A. Unequal Pay Claims

Plaintiff alleges unequal pay claims against the University pursuant to the EPA and the NYLL.  Prop. Am. Compl. ¶¶ 75–77.

### 1. EPA Claim

The EPA makes it unlawful for an employer to "discriminat[e] among employees on the basis of sex by paying higher wages to employees of the opposite sex for equal work." *Ryduchowski v. Port Auth. of N.Y. & N.J.*, 203 F.3d 135, 142 (2d Cir. 2000) (internal quotations omitted).  Liability under the EPA "is limited to those employers subject to the Fair Labor Standards Act" (the "FLSA").  *Washington Cnty. v. Gunther*, 452 U.S. 161, 167–68 (1981).  "An entity 'employs' an individual under the FLSA if it 'suffer[s] or permit[s]' that individual to work."  *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 66 (2d Cir. 2003) (quoting 29 U.S.C. § 203(g)).  This sweeping definition "encompasses 'working relationships, which prior to [the FLSA], were not deemed to fall within an employer-employee category.'"  *Id.* at 69 (quoting *Walling v. Portland Terminal Co.,* 330 U.S. 148, 150–51 (1947)); *see also Frankel v. Bally, Inc.*, 987 F.2d 86, 89 (2d Cir. 1993) (acknowledging the FLSA's "expansive . . . definitional scope") (internal quotations omitted).

Because the FLSA defines employment in broad strokes, "it offers little guidance on whether a given [entity] is or is not an employer."  *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (citation modified).  In the absence of clear statutory guidance, the Supreme Court has instructed that "[t]he determination of whether an employer-employee relationship exists for purposes of the FLSA should be grounded in 'economic reality rather than technical concepts.'"  *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 141 (2d Cir. 2008) (quoting *Goldberg v. Whitaker House Coop., Inc.,* 366 U.S. 28, 33 (1961)).

Consistent with this principle and as relevant here, the Second Circuit has recognized that a joint employment relationship may arise where an employee is "employed by more than one entity at the same time." *Zheng*, 355 F.3d at 66; *see also Barfield*, 537 F.3d at 141 (noting that Second Circuit "precedent recognize[s] the possibility of joint employment" under the FSLA). To be considered a joint employer, an entity need not possess "absolute control" over its employees. *Herman*, 172 F.3d at 139. A joint employer's "[c]ontrol may be restricted, or exercised only occasionally, without removing the employment relationship from the protections of the FLSA, since such limitations on control do[ ] not diminish the significance of its existence." *Id.* (internal quotation omitted). "Because of the fact-intensive character of a determination of joint employment," the Second Circuit has identified different sets of non-exclusive and overlapping factors for courts to consider in evaluating a putative joint employment relationship. *Barfield*, 537 F.3d at 142–43.

### i. The *Carter* Test

In *Carter v. Dutchess Community College,* 735 F.2d 8 (2d Cir. 1984), the Second Circuit recognized four factors relevant to whether a putative joint employer exercises formal control over putative employees' work. The *Carter* factors concern "whether the alleged employer '(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Velez v. Sanchez*, 693 F.3d 308, 326 (2d Cir. 2012) (quoting *Carter*, 735 F.2d at 12). [4]

---

[4] The United States Department of Labor's Wage and Hour Division recently announced a proposed rule to simplify the determination of joint employer status under the FLSA. *See* Joint Employer Status Under the Fair Labor Standards Act, Family and Medical Leave Act, and Migrant and Seasonal Agricultural Worker Protection Act, 91 Fed. Reg. 21878 (Apr. 23, 2026) (to be codified at 29 C.F.R. pts. 500, 780, 791, 825). The proposed rule adopts the four factors set forth in *Carter*. *Id.* at 21919.

The first factor—whether the University has the power to hire and fire CCE Delaware employees—does not support a plausible inference that the University was plaintiff's joint employer.  For one, plaintiff has not alleged that the University hired her or other CCE Delaware employees.  Prop. Am. Compl. ¶¶ 14–15.  And although plaintiff has alleged that University representatives were present at a meeting where the decision to terminate plaintiff was made, *id.* ¶¶ 11, 46, CCE Delaware board members subsequently informed plaintiff that then-Executive Director Virk-Baker made the ultimate decision to terminate plaintiff, *id.* ¶ 59 (alleging that Virk-Baker terminated plaintiff against board members' advice and refused to reinstate plaintiff at their request).  In all, plaintiff has not plausibly alleged that the University had the authority to hire and fire CCE Delaware employees.

The second factor, *i.e.*, whether the University supervised or controlled employee work schedules or conditions of employment, weighs slightly in favor of joint employment.  As an initial matter, plaintiff has not alleged that the University set her work schedule.  And as the University points out, several of plaintiff's allegations indicate that CCE Delaware employees supervised plaintiff's day-to-day work.  Prop. Am. Compl. ¶¶ 16, 27–28, 33–35, 41–43, 58–59.

But still, plaintiff has plausibly alleged that: (1) the University establishes the policies that govern the operations of CCE Delaware; (2) the University is regularly consulted on employment-related issues; (3) and the University has decision-making authority with respect to the job classifications of CCE Delaware employees.  Prop. Am. Compl. ¶¶ 12–13, 21, 32, 36–38, 46, 56, 59, 61.  Moreover, as County Law § 224 explains, the University is responsible for "the proper supervision of the professional staff" employed by county extension service associations.  N.Y. County Law § 224(8)(a).  And to fulfill this supervisory obligation, the University is authorized "to set standards for professional staff and to make rules and regulations for the

organization and conduct of [its] work." *Id.* § 224(8)(e). Overall, the allegations in the proposed amended complaint, together with County Law § 224, support a plausible inference that the University exerts some level of control over the terms and conditions of employment at CCE Delaware.

The third and fourth *Carter* factors concern whether the University determined the rate and method of payment for CCE Delaware employees and whether the University maintained CCE Delaware's employment records. Both factors support a plausible inference of joint employment. Plaintiff's proposed amended complaint alleges that the "University issued [her] paychecks, paid fringe benefits to [her] and other CCE employees, maintained compensation guidelines for CCE staff, and assisted with the maintenance of employment records for CCE Delaware." Prop. Am. Compl. ¶ 9. Taken as true, plaintiff has plausibly alleged that the University played a role in determining the rate and method of payment for CCE Delaware employees, and that the University was involved with the maintenance of employment records.

In all, only one of the four *Carter* factors weighs against joint employment. In some cases, the weight of the *Carter* factors alone will be enough to permit a plausible inference of joint employment. *Barfield*, 537 F.3d at 143 (noting that a positive finding on all four *Carter* factors is not necessary to establish an employment relationship (citing *Zheng*, 355 F.3d at 69 (2d Cir. 2003)) (emphasis in original). But ordinarily, "the broad language of the FLSA . . . demands that a district court look beyond an entity's formal right to control the physical performance of another's work." *Zheng*, 355 F.3d at 69.

For example, the Second Circuit has also found a joint employment relationship where "an entity has functional control over workers even in the absence of the formal control measured by the *Carter* factors." *Zheng*, 355 F.3d at 72; *see Barfield*, 537 F.3d at 146 (finding

joint employment where "the totality of circumstances demonstrate[s] that workers formally employed by one entity operatively function as the joint employees of another entity"). Accordingly, the Court will also consider whether plaintiff has plausibly alleged that the University has functional control over CCE Delaware's employees.

### ii.  The *Zheng* Test

In *Zheng*, the Second Circuit identified six factors relevant to whether a putative joint employer exercises functional control over a subcontractor's employees: (1) whether the employees use the putative employer's premises and equipment; (2) whether the subcontractor's business could shift as a unit from one putative joint employer to another; (3) the extent to which the employees' work is integral to the putative joint employer's process of production; (4) whether responsibility under the subcontracts could pass from one subcontractor to another without material changes; (5) the degree to which the putative employer supervises the subcontractor's employees; and (6) whether the subcontractor's employees work predominantly or exclusively for the putative employer.  *Zheng*, 355 F.3d at 72.

The first *Zheng* factor asks whether plaintiff used the University's premises and equipment to complete her work.  *Zheng*, 355 F.3d at 72.  This factor "is relevant because the shared use of premises and equipment may support the inference that a putative joint employer has functional control over the plaintiff[ 's] work."  *Id.*

This factor does not support a plausible inference of joint employment.  The proposed amended complaint is silent as to whether plaintiff completed any of her work using the University's premises or equipment.  *See generally*, Prop. Am. Compl.  Absent any plausible indication that plaintiff uses the University's property or equipment to complete her duties, this

factor cannot support a plausible inference that the University had functional control over plaintiff's work.

The second *Zheng* factor asks whether CCE Delaware could shift its employees as a unit from the University to another putative employer. *Zheng*, 355 F.3d at 72. This factor "is relevant because a subcontractor that seeks business from a variety of contractors is less likely to be part of a subterfuge arrangement than a subcontractor that serves a single client." *Id.*; *see also Greenawalt v. AT & T Mobility LLC*, 642 F. App'x 36, 38 (2d Cir. 2016) (summary order) (finding that second *Zheng* factor weighed in favor of joint employment where "[subcontractor] essentially existed only to serve [putative employer]").

This factor weighs in favor of joint employment. As a county extension service association, CCE Delaware was formed for the purpose of extending the University's educational programs to Delaware County residents. N.Y. County Law § 224(8)(b). Neither the proposed amended complaint, nor County Law § 224, offer any indication that CCE Delaware could offer the educational programs of any other educational institution. Because CCE Delaware exists only to serve the University, this factor supports a plausible inference that the University has functional control over plaintiff's work.

The third factor—the extent to which the employee's work was integral to the putative employer's process of production—originated in the manufacturing context. *See Zheng*, 355 F.3d at 73 (citing *Rutherford Food Corp. v. McComb,* 331 U.S. 722, 729–30 (1947)). Consequently, "courts have 'question[ed] whether . . . this factor translates well outside of the production line employment situation.'" *Godlewska v. HDA*, 916 F. Supp. 2d 246, 263 (E.D.N.Y. 2013) (quoting *Moreau v. Air France,* 356 F.3d 942, 952 (9th Cir. 2004)), *aff'd sub nom. Godlewska v. Hum. Dev. Ass'n, Inc.*, 561 F. App'x 108 (2d Cir. 2014) (summary order).

This factor has limited relevance to the employment arrangement alleged in this case. The University provides cooperative extension services to fulfill its statutory obligations as a land-grant institution.  *See* 7 U.S.C. §§ 341–42.  CCE Delaware and its employees work in conjunction with the University to deliver cooperative extension services to residents of Delaware County.  Prop. Am. Compl. ¶¶ 8, 13.  In that regard, one could plausibly infer that plaintiff's work is integral to the University's operations.  But still, there is no plausible indication that plaintiff's work is integral to the University's operations as a private educational institution.  Considering the unique factual circumstances, this factor is inconclusive as to functional control.

The fourth *Zheng* factor concerns "whether responsibility under the contracts could pass from one subcontractor to another without material changes."  *Zheng*, 355 F.3d at 74.  The relevant inquiry under this factor is whether "the *same* employees would continue to do the *same* work in the *same* place" regardless of the subcontractor's identity.  *Id.* at 74 (emphases in original).

As with the third factor, the fourth *Zheng* factor maps poorly onto the employment scenario alleged in this case.  County Law § 224 provides that only one county extension service association may be formed or recognized in each county.  N.Y. County Law § 224(8)(b).  Because CCE Delaware is the only subcontractor that can provide cooperative extension services in Delaware County, this factor is inapplicable.

The fifth *Zheng* factor concerns the degree to which the University or its agents supervised plaintiff's work.  Under this factor, "[t]he relevant question is whether [the University] exercised 'effective control of the terms and conditions of [plaintiff's] employment,' rather than merely 'supervision with respect to contractual warranties of quality and time of

delivery.'"  *Greenawalt*, 642 F. App'x at 39 (quoting *Zheng*, 355 F.3d at 75); *see also*

*Godlewska*, 916 F. Supp. 2d at 265 (finding that fifth *Zheng* factor did not support joint

employment where putative employer "merely exercised quality control to ensure that

[subcontractor] delivered quality service and complied with legal requirements").

   This factor substantially overlaps with the second *Carter* factor, which the Court found to

weigh slightly in favor of joint employment.  As noted *supra*, plaintiff primarily alleges that

CCE Delaware employees supervised her day-to-day work.  *See supra* Point IV.A.1.i (discussing

the second *Carter* factor).  And additional factual development may reveal that the University's

supervision of CCE Delaware is limited to quality control and ensuring compliance with legal

requirements.  But at this early stage, plaintiff has plausibly alleged sufficient facts from which it

can be inferred that the University exercises control over CCE Delaware's employment-related

policies and their implementation.  *See* Prop. Am. Compl. ¶¶ 11, 32, 46, 61.  In all, this factor

supports a plausible inference of functional control.

   Finally, the sixth *Zheng* factor concerns "whether the purported joint employees worked

exclusively or predominantly for the putative joint employer."  *Zheng*, 355 F.3d at 75.  Where

"purported joint employees work[ ] exclusively or predominantly for the purported joint

employer . . .[t]he joint employer may *de facto* become responsible, among other things, for the

amount workers are paid and for their schedules."  *Id.*  Conversely, "where a subcontractor

performs merely a majority of its work for a single customer, there is no sound basis on which to

infer that the customer has assumed the prerogatives of an employer."  *Id.*

   This factor weighs in favor of joint employment.  The University partners with CCE

Delaware to offer cooperative extension services in Delaware County.  *See* Prop. Am. Compl.

¶¶ 8, 12–13; *see also* N.Y. County Law § 224(8)(b).  Plaintiff has plausibly alleged that the

University takes on employer prerogatives in connection with this partnership.  Prop. Am. Compl. ¶ 9 (alleging that the University issued paychecks and paid fringe benefits to plaintiff and other CCE Delaware employees).  Accordingly, plaintiff's allegations support a plausible inference that the University exercises a degree of functional control over CCE Delaware employees.

Only one of the relevant *Zheng* factors weighs against joint employment.  And at this early stage, plaintiff is not required to prove that the University is her joint employer as a matter of law.  Collectively and taken as true, the allegations in plaintiff's proposed amended complaint support a plausible inference that the University was her joint employer.

And contrary to the University's contentions, *Kiraly v. Cornell Coop. Extension of Delaware County*, 2024 WL 1242320 (N.D.N.Y. Mar. 22, 2024) does not compel a different conclusion.  At the outset, "[a] decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case."  *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (internal quotation omitted).  Even setting that aside, *Kiraly* is distinguishable in two important ways.

First, as the University acknowledges, the court in *Kiraly* found that a CCE Delaware employee had "not plausibly alleged that [the University] was her employer for the purposes of *Title VII liability*."  *Kiraly*, 2024 WL 1242320, at *17 (emphasis added).  But it is the FLSA's definition of "employ" applies to plaintiff's EPA claim, not the narrower definition contained in Title VII.  *See Frankel*, 987 F.2d at 89 ("Title VII do[es] not contain the same expansive definition of the term 'employ' used in the FLSA.").  *Contrast Irizarry v. Catsimatidis*, 722 F.3d 99, 103 (2d Cir. 2013) ("The common law agency test was found too restrictive to encompass the broader definition of the employment relationship contained in the [FLSA]") (internal quotation

omitted), *with Felder v. U.S. Tennis Ass'n*, 27 F.4th 834, 843 (2d Cir. 2022) ("[T]he common law of agency governs the meaning of 'employer' and 'employee' in Title VII."), *and Kiraly*, 2024 WL 1242320, at *14–17 (applying common law agency factors).

Second, the allegations in plaintiff's proposed amended complaint go beyond those at issue in *Kiraly*. For example, plaintiff's proposed amended complaint alleges that University employees Danielle Hautaniemi ("Hautaniemi") and Lori North were present at the meeting when the decision to terminate plaintiff was made. *See* Prop. Am. Compl. ¶ 46. Conversely, the plaintiff in *Kiraly* alleged that Hautaniemi "'never or rarely attended Personnel Meetings but did try to come to some Board meetings.'" *Kiraly*, 2024 WL 1242320, at *15 (quoting the plaintiff's complaint). And unlike the pleading in *Kiraly*, plaintiff's proposed amended complaint alleges that the University "paid fringe benefits" to plaintiff. Prop. Am. Compl. ¶ 9.

Taking the allegations in plaintiff's proposed amended complaint as true, as the Court must, plaintiff has plausibly alleged that the University was her joint employer under the EPA.[5]

### 2. NYLL Claim

Plaintiff's NYLL claim survives for substantially the same reasons as her EPA claim. "Because the [NYLL] uses a nearly identical definition of the term employer as the FLSA, th[e] Court will interpret[ ] the definition of employer under the [NYLL] coextensively with the definition used by the FLSA." *Yu v. Mask Pot, Inc.*, 241 A.D.3d 726, 728 (2d Dep't 2025) (internal quotation marks omitted). Plaintiff's proposed amended complaint plausibly alleges

---

[5] Notwithstanding this conclusion, the Court emphasizes that the joint employment inquiry is heavily fact-bound and, thus, ill-suited for resolution on the pleadings. *Zheng*, 355 F.3d at 76 n.13 (noting that "two of the three leading cases in this circuit were appeals from judgments following bench trials"); *see also Barfield*, 537 F.3d at 143–44 (explaining that "[b]ecause of the fact-intensive character of a determination of joint employment, [the Second Circuit] rarely ha[s] occasion to review determinations made as a matter of law on an award of summary judgment"); *Ocampo v. 455 Hosp. LLC*, 2016 WL 4926204, at *7 (S.D.N.Y. Sept. 15, 2016) ("To the Court's knowledge, only four decisions within the Second Circuit have ruled on the issue under the Rule 12(b)(6) standard, all of which found that the plaintiffs pled sufficient facts to survive a motion to dismiss.").

that the University was her joint employer under the FLSA.  *See supra* Point IV.A.1 (discussing plaintiff's EPA claim).  Accordingly, plaintiff's allegations are likewise sufficient to support a plausible inference that the University was her joint employer under the NYLL.

## B. NYSHRL Claims

The NYSHRL prohibits employers from, *inter alia*, discriminating against employees based on sex, and retaliating against employees for opposing discriminatory practices.  N.Y. Exec. Law § 296(1)(a), (e).  Common law principles govern whether an entity is an "employer" under the NYSHRL.  *Griffin v. Sirva, Inc.*, 76 N.E.3d 1063, 1069 (N.Y. 2017).  Under New York common law, the following factors are relevant to whether an employment relationship exists: "'(1) the selection and engagement of the [employee]; (2) the payment of salary or wages; (3) the power of dismissal; and (4) the power of control of the [employee]'s conduct.'"  *Griffin*, 76 N.E.3d at 1069 (quoting *State Div. of Hum. Rts. on Compl. of Emrich v. GTE Corp.*, 109 A.D.2d 1082, 1083 (4th Dep't 1985) ("*Emrich*")) (internal quotation omitted).

The first and third factors concern the University's ability to hire and fire employees.  Both weigh against the existence of an employment relationship because, as discussed *supra*, plaintiff has not plausibly alleged that the University has the power to hire and fire CCE Delaware employees.  *See supra* Point IV.A.1.i (discussing the first *Carter* factor).

The second factor, the payment of salary and wages, weighs in favor of the existence of an employment relationship because plaintiff has plausibly alleged that the "University issued [her] paychecks, paid fringe benefits to [her] and other CCE employees, [and] maintained compensation guidelines for CCE staff."  Prop. Am. Compl. ¶ 9.

The fourth factor—whether the University has the ability to control the conduct of CCE Delaware employees—is the most important.  *See Griffin*, 76 N.E.3d at 1069 ("'The really

essential element of the relationship is the right of control, that is, the right of . . . the [putative employer], to order and control another, the [employee], in the performance of work by the latter.'" (quoting *Emrich*, 109 A.D.2d at 1083)). The NYSHRL recognizes joint employment, and "[a]s a functional matter, courts evaluate whether a joint employer relationship exists by considering the control exercised in setting the terms and conditions of the employee's work." *Cannizzaro v. City of N.Y.*, 206 N.Y.S.3d 868, 882 (N.Y. Sup. Ct. 2023). Ordinarily, "[t]he extent of this control is a matter which should be explored in discovery and is not an issue which is amenable to a motion to dismiss for failure to state a cause of action." *Connor v. Pier Sixty, LLC*, 870 N.Y.S.2d 899, 901 (N.Y. Sup. Ct. 2009).

This factor weighs slightly in favor of the existence of an employment relationship. Contrary to the University's contentions, *see* Def.'s Mem. at 15, its alleged involvement in the supervision of CCE Delaware goes beyond "payroll and HR services." As explained *supra*, plaintiff has plausibly alleged that the University established CCE Delaware's operational policies, compensation guidelines, and job classification policies. Prop. Am. Compl. ¶¶ 9, 12–13, 21, 25, 32, 36–38, 46, 56, 59, 61; *see also* N.Y. County Law §§ 224(8)(a), (e) (naming the University responsible for the supervision of the professional staff and authorizing the University "to set standards for professional staff and to make rules and regulations for the organization and conduct of [its] work"). Taken as true, plaintiff has plausibly alleged the University has the ability to control CCE Delaware employees' work. *See Cannizzaro*, 206 N.Y.S.3d at 883–84 (rejecting argument that entity was a "mere funding conduit" rather than an employer where the entity "exercise[d] at least substantial, if not complete, control over determining the compensation and/or salary terms" of employees).

In sum, at this early stage, plaintiff's proposed amended complaint has alleged sufficient facts to support a plausible inference that University was her joint employer under the NYSHRL. *See Klymn v. Sup. Ct., Monroe Cnty.*, 240 A.D.3d 1320, 1322 (4th Dep't 2025) (finding that "plaintiff sufficiently alleged an employment relationship by alleging . . . that defendants paid plaintiff's salary and had the power to control plaintiff's conduct) (internal citation omitted).

### C. Leave to Amend

Plaintiff's proposed amended complaint contains sufficient allegations to survive a 12(b)(6) motion to dismiss. *See supra* Point IV.A–B (discussing plaintiff's claims against the University). Accordingly, the Court grants plaintiff's motion for leave to amend her complaint, *see Milanese*, 244 F.3d at 110, and denies the University's motion to dismiss as moot.

### V. CONCLUSION

Therefore, it is

**ORDERED** that

1. The University's motion to dismiss (Dkt. No. 5) is **DENIED** as moot;

2. Plaintiff's cross-motion to amend (Dkt. No. 12) is **GRANTED**;

3. Plaintiff's proposed amended complaint (Dkt No. 12-1) is **ACCEPTED FOR FILING** by the clerk of the Court; and

4. Defendants CCE Delaware and the University shall answer the amended pleading within 14 days of the date of this decision.

The Clerk of the Court is directed to:

    a. Docket the non-redlined version of plaintiff's proposed amended pleading as the operative complaint in this action;

    b. terminate the pending motions (Dkt. Nos. 5, 12); and

- 19 -

      c.  set a deadline accordingly.

**IT IS SO ORDERED.**

Dated:  June 22, 2026
       Utica, New York.

Anthony J. Brindisi
U.S. District Judge